|  |  |  |
|---|---|---|
| | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | **JS-6** |

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.: 8:23-cv-00867-FWS-KES | Date: October 3, 2023 |
| Title: Danil Chvanov v. Iana Chvanova | |

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Melissa H. Kunig | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: ORDER DENYING EMERGENCY PETITION [1] AND DENYING AS MOOT MOTION TO PICK-UP CHILD [26]**

### I.   Introduction

This matter comes before the court on Petitioner Danil Chvanov's ("Petitioner") "Verified Petition for Securing the Return of the Child to His Country of Habitual Residence Mexico, Pursuant to the Hague Convention on the Civil Aspects of International Child Abduction" ("Petition") and "Notice of Motion and Motion to Pick-Up Minor Child" ("Motion"). (Dkts. 1, 26.)  Petitioner alleges that Respondent Iana Chvanova ("Respondent") wrongfully removed their minor child, I.C., from Mexico and requests that the minor child be returned to Mexico for custody proceedings. (*See generally* Dkt. 1.)  Based on the record, as applied to the applicable law, the court **DENIES** the Petition and therefore **DENIES AS MOOT** the Motion.

### II.   Background

#### A.   Findings of Fact

Petitioner and Respondent are both Russian citizens and were married in the Russian Federation on July 14, 2016.  The parties have one minor child, I.C., who was born in Lipetsk,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                                   Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

Russia on January 1, 2018.  I.C. is also a Russian citizen.  Petitioner and Respondent separated in January 2021, and Respondent subsequently requested a divorce several times.  Petitioner denied Respondent's requests for divorce, and the divorce conversations culminated in a violent incident in which Petitioner beat Respondent in November 2021.  The parties later briefly reconciled in approximately December 2021 but ultimately permanently separated sometime in January 2022.

In March 2022, Respondent and I.C. traveled to Turkey and then Mexico with Respondent's boyfriend at the time.  Respondent and I.C. arrived in Mexico on March 16, 2022.[1]  In May 2022, Petitioner asked to visit I.C.  At that time, he learned that Respondent and I.C. were in Mexico.  Petitioner then asked Respondent to return I.C. to the Russian Federation, and Respondent refused.  Respondent and I.C. stayed in Mexico until May 20, 2022, when they crossed the border into the United States and requested political asylum.  Respondent and I.C. have resided in California since May 2022.

### B.  Procedural Background

On May 18, 2023, Petitioner filed the Petition and initiated this matter under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention")[2] and the United States' implementing statute, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*  (*See generally* Dkt. 1.)

On May 19, 2023, the court ordered Petitioner to serve Respondent with the Petition, Summons, and the court's May 19, 2023, Order by June 5, 2023, and file an accompanying Proof of Service within four days of the date of service.  (Dkt. 6 at 3.)  On May 30, 2023, Petitioner filed two Declarations.  (Dkts. 8, 9.)  On June 7, 2023, the court found these declarations insufficient to discharge Petitioner's notice requirements and again ordered

---

[1] The exact date on which Respondent and I.C. left Russia is unclear.
[2] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (*effective* July 1, 1988).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                                         Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

Petitioner to notify Respondent of these proceedings in accordance with 22 U.S.C. § 9003(c) by June 14, 2023, and file an accompanying Proof of Service within two days of effectuating service.

On June 16, 2023, Artur Kuznetsov, a "representative of Daniel Chvanov by proxy in the United States," filed a declaration stating he called Respondent on her cell phone and asked her if she was "comfortable receiving court documents by sms message." (Dkt. 14.) Mr. Kuznetsov filed a document titled "Cell Phone Screen Shots," purportedly demonstrating that he sent Respondent the court's previous orders via text message.[3] (Dkt. 16.) That same day, Petitioner also filed a declaration requesting that the court continue the June 23, 2023, status conference because he was having difficulty obtaining a visa. (Dkt. 15.)

On June 21, 2023, the court again found Petitioner had not satisfied ICARA's notice requirements because California law does not authorize service by text message and the court had not approved any alternative service. (Dkt. 17.) Based on Petitioner's repeated failure to serve Respondent, the court ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute and comply with court orders. (Dkt. 17 at 4.) The court specified that Petitioner could discharge the Order to Show Cause by serving Respondent in accordance with 22 U.S.C. § 9003(c) and California law governing service and filing adequate proof of service by the same date. (*Id.*) In addition, in light of Petitioner's request for a continuance until July in order to obtain an attorney and the requisite visa to appear in person at the hearing, the court continued the in-person status conference hearing from June 23, 2023, to July 21, 2023. (*Id.* at 5.)

On July 3, 2023, Respondent filed a document requesting a continuance of the in-person status conference because she would not be in California during the month of July. (Dkt. 19.)

---

[3] The text messages provided to the court were not written in English, and it was not possible to discern from the screenshots which documents were sent via text message.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                                         Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

On July 17, 2023, the court granted the request for extension and continued the July 21, 2023, status conference hearing to August 10, 2023. (Dkt. 21 at 5.)

On August 10, 2023, the court held an in-person status conference. (Dkt. 22.) Respondent appeared, stated she had received a copy of the Complaint, and requested a month continuance to obtain an attorney. (*Id.*) The parties also indicated they had not conducted or exchanged discovery. (*Id.*) The court granted Respondent's request, explained the discovery process to the parties, and ordered the parties to complete reciprocal discovery. (*Id.*) The court also ordered both parties to appear for an in-person status conference on September 14, 2023. (*Id.*)

At the September 14, 2023, status conference hearing, both Petitioner and Respondent appeared. (Dkt. 29.) The parties indicated that they still had not exchanged discovery. (*Id.*) Respondent, through her attorney, stated she planned to complete discovery within two to three weeks. (*Id.*) At that point, Petitioner requested that the court advance the October 5, 2023, evidentiary hearing. (*Id.*) The court asked both parties to provide briefing on the request for an expedited hearing. (*Id.*)

On September 19, 2023, after reviewing the parties' briefs, the court granted the Petitioner's request to expedite the hearing and advanced the hearing to September 25, 2023. (Dkt. 32.) On September 25, 2023, the court held an evidentiary hearing with both parties present; Petitioner appeared *pro se* and Respondent was represented by counsel.[4] (Dkt. 35.) Petitioner and Respondent both provided testimony and the court admitted certain exhibits into evidence. (*Id.*)

---

[4] A Russian language interpreter was present, but both Petitioner and Respondent declined to use the interpreter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                          Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

### III. Legal Standard

"The Hague Convention is a multilateral international treaty on parental kidnapping" intended to: (1) "deter parental abductions"; (2) "secure the prompt return of children wrongfully removed or retained in any Contracting State"; and (3) "ensure that parents cannot gain tactical advantages in child custody proceedings by absconding with a child to a more favorable forum or . . . undermining custody decrees entered in the country of the child's habitual residence." *Colchester v. Lazaro*, 16 F.4th 712, 717 (9th Cir. 2021). The Hague Convention "only applies when both countries are parties to it." *Gonzalez v. Gutierrez*, 311 F.3d 942, 944 (9th Cir. 2002) (footnote omitted) (citing Hague Convention, art. 35), *abrogated on other grounds by Abbott v. Abbott*, 560 U.S. 1 (2010).

"The Convention's 'core premise' is that 'the interests of children . . . in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.'" *Golan v. Saada*, 596 U.S. ---, 142 S. Ct. 1880, 1888 (2022) (quoting *Monasky v. Taglieri*, 589 U.S. ---, 140 S. Ct. 719, 723 (2020)). Because "[t]he Convention's focus is . . . *whether* a child should be returned to a country for custody proceedings and not *what* the outcome of those proceedings should be," *Colchester*, 16 F.4th at 717, "[a] court that receives a petition under the Hague Convention may not resolve the questions of who, as between the parents, is best suited to have custody of the child" *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010).

Instead, the court must determine whether "the child has been wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003(e)(1)(A). Pursuant to Article 3 of the Hague Convention, a removal is wrongful where:

> it is in breach of rights of custody attributed to a person . . . under the law of the State in which the Child was habitually resident immediately before the removal or retention; and at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                              Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

Hague Convention, art. 3; *see also Papakosmas v. Papakosmas*, 483 F.3d 17, 622 (9th Cir. 2007).

To determine whether the removal or retention was "wrongful," the court considers the following four questions:

> (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated on other grounds by Monasky*, 589 U.S. ---, 140 S. Ct. 719.

The petitioner bears the burden of proof of establishing wrongful removal or retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A). If a petitioner establishes this prima facie case, the child must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." 42 U.S.C. § 11601(a)(4).

## IV.    Discussion

In this case, the parties principally dispute the location of the child's habitual residence and the date of wrongful removal. Petitioner argues I.C.'s habitual residence is Mexico and therefore the date of wrongful removal was May 20, 2022, when Respondent and I.C. entered the United States. (Dkt. 1 at 2-3; Dkt. 35.) By contrast, Respondent contends I.C.'s habitual residence is the Russian Federation and thus the date of wrongful removal was March 16, 2022, when Respondent and I.C. arrived in Mexico. (Dkt. 28 at 4-6; Dkt. ¶¶ 37-39.) Because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                    Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

court concludes it lacks subject matter jurisdiction over Petitioner's claims due to the child's habitual residence, the court does not reach the date of wrongful removal.

"The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Monasky*, 140 S. Ct. at 726. Because determining the child's habitual residence "is a fact-driven inquiry, 'courts must be sensitive to the unique circumstances of the case and informed by common sense.'" *Id.* at 727 (quoting *Redmond v. Redmond*, 724 F.3d 729, 744 (7th Cir. 2013)); *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (3d Cir. 2006) ("The inquiry into a child's habitual residence is a fact-intensive determination that cannot be reduced to a predetermine formula and necessarily varies with the circumstances of each case."). "There are no categorical requirements for establishing a child's habitual residence," including actual agreement by the parents. *Monasky*, 140 S. Ct. at 728. Instead, courts must consider "a wide range of facts," such as "facts indicating that the parents have made their home in a particular place." *Id.* at 729.

At the hearing, Petitioner argued that I.C.'s place of habitual residence is Mexico because the family had agreed to move to Mexico after Respondent expressed concern about the political situation in Russia. (Dkt. 35.) Although he was not in Mexico from March to May 2022, Petitioner testified that he planned to come and live in Mexico with the family and that he is a now a lawful permanent resident of Mexico. (*Id.*)

On the other hand, Respondent testified that she did not tell Petitioner about the trip to Mexico, that she and I.C. left Russia without Petitioner's knowledge and with the help of her boyfriend at the time, and that Respondent planned the trip as a vacation and did not intend to live in Mexico. (*Id.*) Respondent stated she did not obtain a residency card, open any bank accounts, or try to find employment in Mexico. (*Id.*) Respondent also testified that Petitioner threatened her on numerous occasions after learning that she and I.C. had traveled to Mexico.

Based on the record, the court finds I.C. was a habitual resident of the Russian Federation immediately before his removal in March 2022. I.C. was born in the Russian Federation, to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES　　　　　　　　　　　　　　Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

Russian parents, and lived in the Russia Federation for all four years of his life prior to his removal in March 2022. I.C. then spent approximately two months in Mexico before entering the United States. As the Supreme Court stated in *Monaksy*, "[w]here a child has lived in one place with [their] family indefinitely, that place is likely to be [their] habitual residence." 140 S. Ct. at 727. Therefore, the court concludes that I.C.'s habitual residence was the Russian Federation. *See, e.g.*, *Peyre v. McGarey*, 2023 WL 3726728, at *16 (D. Ariz. May 30, 2023) (finding children's habitual residence was France where the children "were born in France to a French father and, at the time of their removal, had lived their entire lives (except for some vacations) in France"); *Bikundwa v. Ruyenzi*, 2022 WL 18110809, at *3 (W.D. Wash. Dec. 21, 2022) (finding children's habitual residence was Belgium where the children "were born in Belgium . . . and lived there from birth to July 2022, when they traveled to the United States for what was intended to be a several-week visit with Respondent").

　　　　Petitioner's argument that the parties had agreed to move to Mexico does not alter that conclusion for two reasons. First, even assuming *arguendo* that the parties agreed to relocate to Mexico, any such agreement is not dispositive of the habitual residence question after the Supreme Court's decision in *Monasky*. *See Monasky*, 140 S. Ct. at 727 ("There are no categorical requirements for establishing a child's habitual residence—least of all an actual-agreement requirement for infants."); *Rosanen v. Rosanen*, 2023 WL 128617, at *1 (9th Cir. Jan. 9, 2023) ("Any agreement between the parties to raise the children in the United States is not dispositive."). Second, Petitioner has not adequately demonstrated that the parties intended to move to Mexico or provided other evidence suggesting that I.C. was at home in Mexico. Accordingly, the court concludes Petitioner has not demonstrated by a preponderance of the evidence that I.C.'s place of habitual residence is Mexico.[5]

---

[5] The court has carefully considered the credibility of Petitioner and Respondent during their respective testimony, including their demeanor and the content of their testimony. The court also considered any conflicting testimony and evidence in light of all admissible evidence in the record. To the extent there are conflicts between the testimony of Petitioner and Respondent on

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES            Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

___

      Furthermore, because I.C.'s habitual residence is the Russian Federation, the Hague Convention does not apply to the Petition. Pursuant to Article 35, the Hague Convention "shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States." Hague Convention, art. 35; *see also Gonzalez*, 311 F.3d at 944 ('The Convention only applies when both countries are parties to it.") (footnote omitted) (citing Hague Convention, art. 35), *abrogated on other grounds by Abbott v. Abbott*, 560 U.S. 1 (2010); Hague Int'l Child Abduction Convention, Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,509 (1986) ("Article 35 limits application of the Convention to wrongful removals or retentions occurring after its entry into force between the two relevant Contracting States.").

      Although the Hague Convention does not define "Contracting State," it provides two procedures for countries to accept the Hague Convention. Under Article 37, a country that was a member of the Hague Conference of Private International Law at the time of its fourteenth session can accept the Hague Convention by signing and ratifying the treaty. *See* Hague Convention, art. 37. Alternatively, under Article 38, a country that was not a member of the Hague Conference of Private International Law at the time of its fourteenth session can accede to the Hague Convention rather than ratifying it. *See id.*, art. 38. Article 38 provides, in pertinent part:

> The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. . . . The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

___

the issue of habitual residence, the court resolves any conflicts in favor of Respondent and against Petitioner.

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES                                    Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

___

*Id.*

Essentially, "[a]ccession . . . binds a country only with respect to other nations that accept its particular accession under Article 38." *Gonzalez*, 311 F.3d at 944 n.2 (citation omitted); *Marks on Behalf of SM v. Hochhauser*, 876 F.3d 416, 420 (2d Cir. 2017) ("As Article 38 makes clear, accession requires the acceptance of other states before the Convention 'will enter into force,' *i.e.*, the accession has effect only as to Contracting States that 'have declared their acceptance of the accession.'") (quoting Hague Convention, art. 38).

The United States signed the Hague Convention in 1981, and the Hague Convention entered into force on July 1, 1988. *See Convention of 25 October 1980 on the Civil Aspects of Child Abduction: Status Table*, Hague Convention on Private International Law, https://www.hcch.net/en/%20instruments/conventions/status-table/?cid=24 (last updated November 14, 2022). The Russian Federation acceded to the Hague Convention on July 28, 2011. *See id.* However, the United States has not accepted the Russian Federation's accession. Acceptances of Accessions, https://www.hcch.net/en/instruments/conventions/status-table/acceptances/?mid=1112 (last visited October 2, 2023).

Because the United States has not accepted the Russian Federation's accession, the Hague Convention has not "entered into force" between the United States and the Russian Federation. Therefore, given that the court found that I.C.'s habitual residence is the Russian Federation, the Hague Convention does not apply to the Petition, and the court lacks subject matter jurisdiction over Petitioner's claims. *See, e.g.*, *Alikovna v. Viktorovich*, 2019 WL 4038521, at *2 (S.D. Fla. Aug. 27, 2019) (finding petitioner failed to establish court's subject matter jurisdiction over Hague Convention petition alleging wrongful removal where child's habitual residence was Russia); *Taveras v. Taveras*, 397 F. Supp. 2d 908, 911 (S.D. Ohio 2005) ("It is undisputed that the United States and the Dominican Republic have not entered into the negotiations require by Article 38. Consequently, the Convention's administrative and judicial mechanisms are not yet applicable with regard to relations between the two countries."); *cf. Green v. Phuong*, 2023 WL 5608992, at *1 (9th Cir. Aug. 30, 2023) (affirming dismissal of

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00867-FWS-KES  Date: October 3, 2023
Title: Danil Chvanov v. Iana Chvanova

petition under Hague Convention for lack of subject matter jurisdiction because petitioner did not allege sufficient facts to show his children were habitually resident in a contracting state); *Hochhauser*, 876 F.3d at 423 ("[B]ecause the Convention did not enter into force between the United States and Thailand until April 1, 2016, after the allegedly wrongful retention of the [c]hildren in New York on October 7, 2015, the Convention does not apply to Marks's claim and the district court did not err in dismissing his petition.").

The court thus **DISMISSES** Petitioner's claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action,"); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). Because the court concludes it lacks subject matter jurisdiction, the court does not address the other aspects of Petitioner's prima facie case or Respondent's defenses asserted in her Answer, including the timeliness of the Petition under Article 12 of the Hague Convention which may be at issue here. The court also **DENIES AS MOOT** the Motion.

V.   Disposition

For the reasons states above, the court **DISMISSES** the Petition for lack of subject matter jurisdiction and **DENIES AS MOOT** the Motion. The clerk of court close is respectfully directed to **CLOSE** this case.

**IT IS SO ORDERED.**

Initials of Deputy Clerk:  mku